SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into among: (a) the United States of America, acting through the United States Department of Justice and on behalf of U.S. Customs and Border Protection ("CBP" or "Customs") (collectively the "United States"); (b) defendants CWD, LLC; CWD Holding Corp.; CWD Intermediate Holding Corp.; CWD Acquisition, LLC; APC Automotive Technologies Intermediate Holdings, LLC; APC Automotive Technologies, LLC; Qualis Enterprises, Inc.; Qualis Automotive, L.L.C.; AP Emissions Technologies, LLC; AP Exhaust Products DISC, Inc.; Eastern Manufacturing, LLC; AirTek, LLC; and Aristo, LLC (collectively, "Defendants" and the term "Defendants" includes each of them individually); and (c) Jeffrey S. Hawk and Steven Hughes ("Relators"). Hereafter, the United States, Relators, and Defendants may be individually referred to as a "Party" or collectively referred to as the "Parties."

RECITALS

A.      Defendants are an aftermarket supplier of brake, chassis, exhaust and emissions parts in North America. As part of their business, Defendants have imported, engineered, and distributed brake parts.

B.      On July 7, 2017, Relator Jeffrey S. Hawk filed a *qui tam* action in the United States District Court for the Eastern District of Michigan captioned *United States ex rel. Jeffrey S. Hawk v. CWD Holdings, LLC, Advance Stores Company, Inc., and Ozark Automotive Distributors, Inc.,* No. 17-cv-12225-BAF (EASx) (E.D.Mich. 2017), pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b); and on August 14, 2019, Relator Steven Hughes filed a *qui tam* action in the United States District Court for the Central District of California captioned *United States ex rel. Steven Hughes v. CWD,*

*LLC, et al.*, No. 19-7089-DMG (JEMx) (C.D.Cal. 2019), with multiple overlapping *qui tam* allegations (collectively, the two *qui tam* cases are the "Civil Actions"). The Civil Actions allege that Defendants concealed a decade-long tariff misclassification of imported brake pads from CBP, thereby resulting in the improper avoidance by Defendants of millions of dollars in import duties. Specifically, the Civil Actions allege that Defendants knowingly misclassified imported "mounted" brake pads as "not mounted" using an incorrect classification code under the Harmonized Tariff Schedule of the United States from at least September 2006 through April 2017, thereby resulting in Defendants' non-payment of a 2.5% tariff on those imported brake pads during that period. The Civil Actions further allege that in April 2017, when confronted with the misclassification, corporate officers of Defendant CWD, LLC concealed and decided not to disclose the past misclassification to CBP. Relator Hughes's Civil Action also alleges certain retaliation, wrongful-termination, constructive-discharge, and other employment-related claims (the "Hughes Retaliation Claims").

C.      The United States contends that it has certain civil claims against Defendants for: (a) Defendants' knowing misclassification of "mounted" imported brake pads as being "not mounted" from September 2006 through April 2017, which resulted in Defendants' non-payment of a 2.5% tariff on those imported brake pads during that period; and (b) when confronted with the misclassification, concealing and deciding not to disclose the past misclassifications to CBP. The conduct described in this Paragraph C is referred to below as the "Covered Conduct."

D.     This Agreement is neither an admission of liability or wrongdoing by Defendants regarding the Covered Conduct or the allegations in the Civil Actions, nor a concession by the United States that its claims are not well founded.

E.     Relators claim entitlement under 31 U.S.C. § 3730(d) to a share of the proceeds of this Agreement and to Relators' reasonable expenses, attorneys' fees, and costs.

F.     On June 3, 2020, Defendants filed voluntary petitions under chapter 11 of Title 11 of the United States Code (11 U.S.C. §§ 101 *et seq.* "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware ("Bankruptcy Court") in the jointly administered cases captioned, *In re APC Automotive Technologies Intermediate Holdings, LLC. et al*., Case No. 20-11466-CSS (Bankr. D. Del. 2020) ("Bankruptcy Case"). Defendants remain in possession of their property and are managing their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Defendants have proposed a Plan[1] that provides for a comprehensive restructuring of their prepetition obligations and preserves the going-concern value of the Defendants' businesses. This Agreement and the Settlement Amount described in paragraph 1 below represents a non-dischargeable debt under 11 U.S.C. §1141(d)(6); and any plan, supporting plan documents, or order confirming the plan will include language, as appropriate, giving effect to this paragraph.[2] The Defendants anticipate that the

---

[1]     "Plan" refers to the *Joint Prepackaged Chapter 11 Plan of Reorganization of APC Automotive Technologies Intermediate Holdings, LLC and Its Debtor Affiliates*, filed by the debtor Defendants in the Bankruptcy Case [Docket No. 23].

[2]     References to Defendants shall include and encompass the Reorganized Debtors as defined in the Plan.  For the avoidance of doubt, the Reorganized Debtors shall be considered successors to Defendants and be fully responsible for any liabilities, obligations, or conditions included in this Agreement.

Bankruptcy Court will confirm the Plan on July 10, 2020, or on such other date as determined by the Bankruptcy Court, which shall then become effective upon the "Effective Date" as such term is defined in the Plan.

To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Agreement, the Parties agree and covenant as follows:

<u>TERMS AND CONDITIONS</u>

1.    Defendants shall pay to the United States the sum total of $8,000,000.00 ("Settlement Amount"), of which $5,463,347 is restitution, as follows:

   a.  Defendants will make a payment to the United States in the amount of $4,000,000 by electronic funds transfer pursuant to written instructions to be provided by the Office of the United States Attorney for the Eastern District of Michigan no later than five business days after the Agreement Effective Date (defined below).

   b.  By January 31, 2021, Defendants will pay an additional $2,000,000, plus interest at the 5-year Treasury note rate per annum (0.3%) that is in effect on the Agreement Effective Date. By December 31, 2021, Defendants will pay the remaining $2,000,000, plus interest at the 5-year Treasury note rate per annum (0.3%) that is in effect on the Agreement Effective Date.

   c.  Collectively the Settlement Amount and interest to be received by the United States pursuant to this Agreement shall be referred to as the "Settlement Consideration." Any unpaid Settlement Consideration shall

4

be secured by a lien ("United States Lien") on the "Collateral" (as such term is defined in the ABL Exit Facility and Term Exit Facility (each as defined in the Plan)). Defendants represent and warrant that there are no current encumbrances on the Collateral other than the United States Lien, liens in favor of the ABL Exit Facility and Term Exit Facility (as defined in the Plan) and other liens permitted to be outstanding under each of the ABL Exit Facility and Term Exit Facility (collectively, the "Senior Liens"). The United States Lien shall be at all times junior and subordinate in all respects only to the Senior Liens for all purposes, and senior to any other interests, until the Settlement Consideration is fully paid, at which time the United States Lien will be automatically and unconditionally released and discharged. Based on the valuation analysis attached as Exhibit D to the Disclosure Statement,[3] on the Effective Date, the Defendants represent, based on their current actual knowledge, that there will be more than $4 million in equity value, after all secured claims with liens senior to the United States Lien. Defendants shall assist the United States in completing the required filing to record the United States Lien on the Collateral within five (5) days after the Agreement Effective Date. Defendants shall do and cause to be done all things reasonably necessary and requested to perfect and keep in full force the United States Lien, including, but not limited to,

---

[3]    "Disclosure Statement" refers to the *First Amended Disclosure Statement for the Joint Prepackaged Chapter 11 Plan of Reorganization of APC Automotive Technologies Intermediate Holdings, LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 25].

the prompt payment of Defendants' reasonable fees and expenses incurred in connection with any filings made to perfect the United States Lien, until the Defendants pay the Settlement Consideration in full. Defendants further agree to keep and maintain the Collateral in good condition (except for ordinary wear and tear) and keep current on all taxes and fees owed. In addition, Defendants agree to maintain insurance on the Collateral with a reputable and financially sound insurance company that is customary (in amount and coverage) with similar assets and consistent with past practices.

d.   To the extent that Defendants effectuate a sale of all, or substantially all, of their assets or equity before December 31, 2021, and any Settlement Consideration is outstanding, the United States shall be paid the outstanding balance of the Settlement Consideration on the closing date of such sale.

e.   To the extent that Defendants do not pay the Settlement Consideration in full on or before December 31, 2021, Defendants acknowledge that the United States has a non-dischargeable claim for $16.5 million plus civil penalties (representing $5.5 million single damages times three); provided, that the $16.5 million shall not be a secured claim in the Bankruptcy Case; and provided, further that any such amount shall be reduced on a dollar for dollar basis by any amounts of the Settlement Consideration previously paid to the United States pursuant to the Agreement.

2.     Conditioned upon the United States receiving the Settlement Consideration payments from Defendants, the United States agrees that it shall pay to Relators, collectively, from the Settlement Consideration payments received from Defendants, all of Relators' share of the Settlement Consideration (the "Relators' Share Payments"), by electronic funds transfer, namely, 18.5 percent of each such Settlement Consideration payment received under the Agreement as soon as feasible after receipt of the Settlement Consideration payment. The United States shall make all such Relators' Share Payments to Relator Jeffrey S. Hawk's counsel's Client Trust Account (and it will then be Relator Hawk's responsibility to pay Relator Steven Hughes). The United States has been advised by counsel for the Relators that the Relators have agreed that the entire Relators' share will be paid to Relator Jeffrey S. Hawk's counsel's Client Trust Account to be distributed between the two Relators pursuant to their False Claims Relators Share Agreement and Conflict Waiver. If Defendants fail to make a Settlement Consideration payment, the United States will have no obligation to make the corresponding Relators' Share Payment.

3.     Defendants shall have no obligations to make any payments to Relators, other than as set forth in this paragraph. Defendants will pay an agreed amount for both Relators' expenses, and attorney's fees and costs of $250,000, by electronic funds transfer to Relator Jeffrey S. Hawk's counsel's Client Trust Account no later than <u>five (5)</u> days after the Effective Date of this Agreement. Relator Jeffrey S. Hawk's counsel will distribute the funds pursuant to a separate agreement between the two Relators' counsel.

4.     Subject to the exceptions in Paragraph 6 (concerning excluded claims) below, and conditioned upon Defendants' full payment of the Settlement Consideration, the United States fully and finally releases Defendants, and their current directors, officers,

7

agents, and employees ("Defendant Releasees") as of the Agreement Effective Date, from any civil or administrative monetary claim the United States has for the Covered Conduct, under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; 19 U.S.C. §§ 1592 and 1595a of the Tariff Act of 1930, as amended; or the common law theories of breach of contract, payment by mistake, unjust enrichment, and fraud (collectively, "Released Claims").

5.      Subject to the exceptions in Paragraph 6 below, and conditioned upon Defendants' full payment of the Settlement Consideration, Relators, for themselves and for their heirs, successors, attorneys, agents, and assigns, fully and finally release Defendant Releasees from any civil or other monetary claim related to the Covered Conduct, including but not limited to the Released Claims, that Relators have asserted, could have asserted, or may assert in the future against Defendant Releasees.  Notwithstanding the terms of this paragraph 5, or any other term of this Agreement, the Hughes Retaliation Claims are specifically reserved and are not released.

6.      Notwithstanding the releases given in paragraphs 4 and 5 of this Agreement, or any other term of this Agreement, the following claims of the United States are specifically reserved and are not released:

    a.      Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

    b.      Any criminal liability;

    c.      Except as explicitly stated in the Agreement, any administrative liability, including the suspension and debarment rights of any federal agency;

8

d.  Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

e.  Any liability based upon obligations created by this Agreement; and,

f.  Any liability of individuals who were not employed by Defendants on the Agreement Effective Date.

7.  Relators, for themselves, and for their heirs, successors, attorneys, agents, and assigns shall not object to this Agreement but agree and confirm that this Agreement is fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B).  Conditioned upon Relators' receipt of the Relators' Share Payments described in Paragraph 2, Relators and their heirs, successors, attorneys, agents, and assigns fully and finally release, waive, and forever discharge the United States, its agencies, officers, agents, employees, and servants, from any claims arising from the filing of the Civil Actions or under 31 U.S.C. § 3730, and from any claims to a share of the proceeds of this Agreement and/or the Civil Actions (except to the extent that Relators pursue the Civil Actions against defendants who are not the Defendants in this Agreement).

8.  Relators, for themselves, and for their heirs, successors, attorneys, agents, and assigns, release Defendant Releasees, from any liability to Relators arising from the filing of the Civil Actions or the Covered Conduct, or under 31 U.S.C. § 3730(d) for expenses or attorney's fees and costs; provided, however, that the Hughes Retaliation Claims shall not be released.

9.  Defendants waive and shall not assert any defenses Defendants may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause

9

in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action.

10.     Defendants fully and finally release the United States, its agencies, officers, agents, employees, and servants, from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that Defendants have asserted, could have asserted, or may assert in the future against the United States, its agencies, officers, agents, employees, and servants, related to the Covered Conduct and the United States' investigation and prosecution thereof.

11.     Defendants fully and finally release the Relators and their respective heirs, agents, successors, attorneys and assigns from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that Defendants have asserted, could have asserted, or may assert in the future against the Relators, their respective heirs, agents, successors, attorneys and assigns, related to the Covered Conduct and the Relators' investigation, filing and prosecution of the Civil Actions.

12.     a.     Unallowable Costs Defined: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47) incurred by or on behalf of Defendants, and its present or former officers, directors, employees, shareholders, and agents in connection with:

> (1)     the matters covered by this Agreement;
>
> (2)     the United States' audit(s) and civil investigation(s) of the matters covered by this Agreement;

(3)    Defendants' investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil investigation(s) in connection with the matters covered by this Agreement (including attorney's fees);

(4)    the negotiation and performance of this Agreement;

(5)    the payments Defendants make to the United States pursuant to this Agreement and any payments that Defendants may make to Relators, including costs and attorneys' fees,

are unallowable costs for government contracting purposes (hereinafter referred to as "Unallowable Costs").

b.    Future Treatment of Unallowable Costs:  Unallowable Costs will be separately determined and accounted for by Defendants, and Defendants shall not charge such Unallowable Costs directly or indirectly to any contract with the United States.

c.    Treatment of Unallowable Costs Previously Submitted for Payment: Within 90 days after the Agreement Effective Date, Defendants shall identify and repay by adjustment to future claims for payment or otherwise any Unallowable Costs included in payments previously sought by Defendants or any of their subsidiaries or affiliates from the United States.  Defendants agree that the United States, at a minimum, shall be entitled to recoup from Defendants any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted requests for payment.  The United States, including the Department of Justice and/or the affected agencies, reserves its rights to audit, examine, or re-examine Defendants' books and records and to disagree with any calculations submitted by Defendants or any of its

11

subsidiaries or affiliates regarding any Unallowable Costs included in payments previously sought by Defendants, or the effect of any such Unallowable Costs on the amount of such payments.

13.    Defendants agree to cooperate fully and truthfully with the United States' investigation of individuals and entities not released in this Agreement.  Upon reasonable notice, Defendants shall encourage, and agree not to impair, the cooperation of their directors, officers, and employees, and shall use their best efforts to make available, and encourage, the cooperation of former directors, officers, and employees for interviews and testimony, consistent with the rights and privileges of such individuals. Defendants further agree to furnish to the United States, upon written request, complete and unredacted copies of all non-privileged (1) documents, (2) reports, (3) memoranda of interviews, and (4) records in their possession, custody, or control concerning any investigation of the Covered Conduct that they have undertaken, or that have been performed by another on their behalf.

14.    This Agreement is intended to be for the benefit of the Parties only.

15.    On or before the Agreement Effective Date, the Parties shall sign in each of the Civil Actions a Joint Stipulation of Dismissal ("Stipulation of Dismissal") without prejudice pursuant to Rule 41(a)(1), except that Relator Hughes shall not be required to dismiss the Retaliation Claims and shall be entitled to pursue those claims, and Defendants and Relator Hughes agree to reserve all rights, claims, defenses, and remedies related to, or arising out of, the Hughes Retaliation Claims and except that Relator Hawk shall not be required to dismiss claims against defendants who are not the Defendants in this Agreement and Relator Hawk reserves all rights, claims, defenses, and remedies related to, or arising

out of such claims.  Promptly after Defendants have paid the United States the initial $4,000,000 described in Paragraph 1.a., the Parties shall file a motion or stipulation to amend each Stipulation of Dismissal in each Civil Action to be with prejudice as to the Covered Conduct, except that the motion or stipulation to amend the Stipulation of Dismissal will not include the Hughes Retaliation Claims.

16.     Each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

17.     Each Party and signatory to this Agreement represents that it freely and voluntarily enters into this Agreement without any degree of duress or compulsion.

18.     This Agreement is governed by the laws of the United States.  The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the Eastern District of Michigan. For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

19.     This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties.

20.     The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

21.     This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

22.     This Agreement is binding on Defendants' successors, transferees, heirs, and assigns.

23.     This Agreement is binding on Relators' successors, transferees, heirs, and assigns.

24.     All Parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

25.     This Agreement shall be binding on the Parties as of the date of the last signature to the Agreement; however, the obligations of the Parties under this Agreement are subject to and contingent upon the occurrence of the Effective Date, and this Agreement shall not go into effect until such date ("Agreement Effective Date").

26.     Facsimiles or electronic scans of signatures (such as pdf scans) shall constitute acceptable, binding signatures for purposes of this Agreement.

<u>THE UNITED STATES OF AMERICA</u>

DATED:     July 9, 2020

MATTHEW SCHNEIDER
United States Attorney for the Eastern District of Michigan

*John Spaccarotella*
JOHN SPACCAROTELLA
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226

NICOLA T. HANNA
United States Attorney for the Central District of California
DAVID M. HARRIS, AUSA
Chief, Civil Division
DAVID K. BARRETT, AUSA
Chief, Civil Fraud Section
ABRAHAM C. MELTZER, AUSA
Deputy Chief, Civil Fraud Section

KAREN Y. PAIK
Assistant United States Attorney
300 N. Los Angeles Street
Los Angeles, California 90012

14

ETHAN P. DAVIS
Acting Assistant Attorney General

DATED:

JEANNE DAVIDSON

Digitally signed by
JEANNE DAVIDSON
Date: 2020.07.10
09:17:20 -04'00'

JEANNE E. DAVIDSON
Director, Commercial Litigation Branch
Civil Division
Department of Justice

DATED:

STEPHEN TOSINI

Digitally signed by STEPHEN
TOSINI
Date: 2020.07.09 17:03:36
-04'00'

STEPHEN C. TOSINI
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice


DEFENDANTS

CWD, LLC; CWD Holding Corp.; CWD
Intermediate Holding Corp.; CWD
Acquisition, LLC; APC Automotive
Technologies Intermediate Holdings, LLC;
APC Automotive Technologies, LLC; Qualis
Enterprises, Inc.; Qualis Automotive, L.L.C.;
AP Emissions Technologies, LLC; AP
Exhaust Products DISC, Inc.; Eastern
Manufacturing, LLC; AirTek, LLC; and
Aristo, LLC

DATED: _____

_____
MARC WEINSWEIG
Authorized signatory for Defendants


HOLLAND & HART LLP

DATED: _____

_____
GREG E. GOLDBERG
DAVID J. GLYNN
Counsel for APC Automotive Technologies
(direct or indirect parent of other Defendants)

ETHAN P. DAVIS
Acting Assistant Attorney General

DATED: _____

_____
JEANNE E. DAVIDSON
Director, Commercial Litigation Branch
Civil Division
Department of Justice

DATED: _____

_____
STEPHEN C. TOSINI
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice

DEFENDANTS

CWD, LLC; CWD Holding Corp.; CWD
Intermediate Holding Corp.; CWD
Acquisition, LLC; APC Automotive
Technologies Intermediate Holdings, LLC;
APC Automotive Technologies, LLC; Qualis
Enterprises, Inc.; Qualis Automotive, L.L.C.;
AP Emissions Technologies, LLC; AP
Exhaust Products DISC, Inc.; Eastern
Manufacturing, LLC; AirTek, LLC; and
Aristo, LLC

DATED: ___7-10-20___

_____
MARC WEINSWEIG
Authorized signatory for Defendants

HOLLAND & HART LLP

_____
GREG E. GOLDBERG
DAVID J. GLYNN
Counsel for APC Automotive Technologies
(direct or indirect parent of other Defendants)

15

Jeffrey S. Hawk - RELATOR

DATED: 7/9/20

_____
Relator Jeffrey S. Hawk

HOYER LAW GROUP, PLLC

DATED: 7/9/20

_____
DAVID L. HARON
Attorney for Relator Jeffrey S. Hawk


Steven Hughes - RELATOR

DATED: _____

_____
Relator Steven Hughes

CONSTANTINE CANNON LLP

DATED: _____

_____
ERIC R. HAVIAN
Attorney for Relator Steven Hughes


14817938_18

16

<u>Jeffrey S. Hawk - RELATOR</u>

DATED: _____

                              _____
                               Relator Jeffrey S. Hawk

                               HOYER LAW GROUP, PLLC

DATED: _____

                               _____
                               DAVID L. HARON
                               Attorney for Relator Jeffrey S. Hawk

<u>Steven Hughes - RELATOR</u>

DATED: 7.10.2020

                               _____
                               Relator Steven Hughes

                               CONSTANTINE CANNON LLP

DATED: _____

                               _____
                               ERIC R. HAVIAN
                               Attorney for Relator Steven Hughes

14817938_18

<u>Jeffrey S. Hawk - RELATOR</u>

DATED: _____

_____
Relator Jeffrey S. Hawk

HOYER LAW GROUP, PLLC

DATED: _____

_____
DAVID L. HARON
Attorney for Relator Jeffrey S. Hawk

<u>Steven Hughes - RELATOR</u>

DATED: _____

_____
Relator Steven Hughes

CONSTANTINE CANNON LLP

DATED: <u>July 10, 2020</u>

_____
ERIC R. HAVIAN
Attorney for Relator Steven Hughes

14817938_18

16